## Case No. 13,859.

### The THAMES.

[7 Blatchf. 226.] [1]

Circuit Court, S. D. New York. April 23, 1870.[2]

BILL OF LADING—DELIVERY TO WRONG PERSON—PARTIES.

1. A vessel gave bills of lading for cotton in Savannah, making it deliverable to order in New York. G., the shipper of the cotton, drew his draft at Savannah, on P., in New York, to the order of B., "Cashier," and endorsed the bills of lading to B., "Cashier." The draft was discounted for G. by M., with moneys of A., and the proceeds were applied by G. to pay for the cotton, on its purchase from M. The draft and the bills of lading, so endorsed, were delivered by G. to M. They were sent by M. to B., "Cashier," to collect the draft, for the credit of the account of A. with the bank of which B. was cashier. The bills of lading were intended as a transfer of the cotton to B. as security for the payment of the draft. On the bill of lading retained by the vessel was a memorandum that the cotton was for P. The vessel, on the next day after her arrival at New York, delivered the cotton to P., without the presentation of any of the outstanding bills of lading. The draft not being paid, B. brought this suit, in admiralty, against the vessel, in his own name, for the value of the cotton. *Held*, that the vessel was liable therefor to B., in this suit.

2. If the vessel might have been justified in leaving the cotton on the wharf, under certain special provisions in the bill of lading, actual delivery to persons having no authority to receive it was not justified by delay in the presentation of the bill of lading by the holder thereof.

3. Although the draft was made payable to B., "Cashier," in order that he might receive payment thereof and pay over the proceeds, he could proceed in admiralty against the vessel in his own name.

[Cited in Robinson v. Memphis & C. R. Co., 9 Fed. 141.]

[Appeal from the district court of the United States for the Southern district of New York.]

In admiralty.

Benjamin F. Lee, Jr., for libellant.

William Allen Butler. for claimants.

WOODRUFF, Circuit Judge. This case has been ably and ingeniously argued on the appeal, but a careful examination of the

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Affirming Case No. 13,858. Decree of circuit court affirmed by supreme court in 14 Wall. (81 U. S.) 98.]

proofs leaves no doubt upon my mind, in respect to the material facts. Gilbert S. Van Pelt purchased, on the 28th of January, 1868, in Savannah, Georgia, one hundred and eleven bales of cotton, from the firm of Brady & Moses, for the firm of Bennett, Van Pelt & Co., of New York, (in which firm Gilbert S. Van Pelt was a partner,) and, on the same day, shipped the cotton to New York, by the steamship Thames, receiving bills of lading therefor, in which the cotton was expressly made deliverable to order. On the same day, in order to procure money wherewith to pay for the cotton, and in compliance with the terms and conditions of the purchase, he drew his draft on his firm in New York, for eight thousand three hundred dollars, payable fifteen days after sight, to the order of "Billop Seaman, Cashier," and also endorsed upon the bills of lading of the cotton, an order. directing the delivery of the cotton to Billop Seaman, Cashier, and delivered the draft, and the bills of lading, to the said Brady & Moses, who held moneys of the Atlanta National Bank, of Atlanta, Georgia, for the purpose of investment in bills drawn on New York, and the draft was discounted for the account of that bank, and the proceeds were applied toward the payment for the cotton. The evidence establishes, that the bills of lading were delivered, and were intended, as a transfer of the cotton to the libellant, Billop Seaman, as security for the payment of the draft, at its maturity. The draft and the bills of lading were forwarded to the libellant, to hold and collect, for the credit of the account of the said Atlanta National Bank with the Fourth National Bank of the City of New York, of which last-named bank the said Seaman was the cashier. The Thames arrived, with the cotton on board, at the port of New York, on Sunday, the 2d day of February, and, on the next day, the cotton was delivered to Bennett, Van Pelt & Co., by whom it was removed and sold the same day. On the ship's bill of lading appears a memorandum, which does not appear at all on the other bills of lading, indicating that the cotton was "for Bennett, Van Pelt & Co.," although the body of that bill declared, as did the other bills. that the steamship undertook the carriage, and to deliver in New York, to order. By whomsoever that memorandum was made, it was not by Brady & Moses, or with their knowledge. The draft became due on the 19th of February, and was not paid. The libellant then sought the cotton, and learned that it had been delivered to Bennett, Van Pelt & Co. on the morning after its arrival.

These facts are. I think, established by a clear preponderance of evidence, and, upon them, the liability of the ship for the cotton is quite clear. The delay of the libellant in presenting the bills of lading to the ship, or its owners, (whatever else, in respect to the care, keeping, or custody of the cot-

ton, certain special conditions annexed to the usual terms of the bill of lading would have permitted,) did not justify a delivery of the cotton to Bennett, Van Pelt & Co., who had, in fact, no bill of lading, nor any authority to receive the cotton. Nor was such delivery caused or promoted, in any degree, by such delay, for it was made the next morning after the ship's arrival. If, by the special terms of the bill of lading, the ship would have been justified in storing the cotton, or even in placing it upon the wharf, at the risk of the consignee, when no person appeared to claim it having the order of the shipper, even then there was no justification for a wrong delivery, to one who held no bill of lading. By issuing bills of lading for the cotton, as deliverable to order, the ship became bound not to deliver it without the production of such order; and laches of the holder, in not presenting the order, however it might warrant the ship in divesting itself of the special risks assumed as carrier, formed no warrant for a delivery of the cotton to a person who had no authority to receive it. Nor did the memorandum on the ship's bill of lading, "for Bennett, Van Pelt & Co.," constitute any warrant for such delivery. The ship's bill of lading is not the operative instrument between the ship and the consignee. The bills of lading signed and delivered as the undertaking of the ship, on which parties dealing therewith had a right to rely, contained no such words. Besides, the words themselves are not inconsistent with the actual undertaking embodied in the instrument, namely, to deliver to order, and they did not at all justify a delivery without order, while the order was outstanding in favor of another. For whosesoever ultimate benefit the shipment was made, the ship had agreed to deliver to order, and this agreement was broken instantly on arrival, without enquiry, and in such wise that it would have required extraordinary diligence, on the part of the libellant, to intercept it.

The objection that the libel was improperly filed in the name of Billop Seaman must, also, be overruled. The draft was made payable to him, and the bills of lading were endorsed to him. Notwithstanding the word "Cashier" was annexed to his name, he could, even at law, I think, have sued upon and collected the draft, unless something more appeared than that the moneys were to be paid over to the Fourth National Bank to the credit of the Atlanta National Bank. There is, no doubt, some confusion, in the cases at law, upon the question whether the Fourth National Bank could have maintained an action at law upon the draft. But here it is plain, that the libellant, described as cashier, was selected by the parties, and was clothed by Gilbert S. Van Pelt with the legal title to both the bill and the cotton. Be this as it may, the case of Houseman v. The North Carolina, 15 Pet. [40 U. S.] 40, 49, and McKinlay v. Morrish, 21 How. [62 U. S.] 343, 355, leave no doubt that, in admiralty, Seaman can sustain the suit in his own name.

The decree must be affirmed, with costs.

[Affirmed in 14 Wall. (81 U. S.) 98.]