or one of two inconsistent causes of action, and the problem is to determine which shall be recognized. Only one cause of action is here alleged notwithstanding that irrelevant facts are contained in the complaint, that judgment is demanded for more extensive relief than the facts warrant, and that unnecessary parties have been brought before the court.

The interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs and with leave to the respondent to withdraw the demurrer and serve an answer within 20 days on payment of costs in this court and at Special Term. All concur, SMITH, P. J., and KELLOGG, J., in result.

(64 Misc. Rep. 327.)

## CANANDAIGUA NAT. BANK v. SOUTHERN RY. CO.

(Supreme Court, Trial Term, Ontario County. August 30, 1909.)

1. PRINCIPAL AND AGENT (§ 103*)—AUTHORITY.

Where a produce company had for three years without question bought apples for another for shipment to his customers, and deposited the bills of lading as collateral to the drafts drawn upon such other, the produce company was authorized to negotiate the bills in that manner.

[Ed. Note.—For other cases, see Principal and Agent, Cent Dig. § 278; Dec. Dig. § 103.*]

2. CARRIERS (§ 58*)—BILLS OF LADING—TRANSFER—EFFECT TO PASS TITLE.

Where a produce company purchased apples for another for shipment, and, by the latter's authority, delivered the bill of lading to plaintiff without indorsement as security for the payment of the purchase price draft which plaintiff discounted, title to the apples passed to plaintiff, so that it could sue the one for whom they were ordered for converting them by ordering their delivery to his customers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 183; Dec. Dig. § 58.*]

3. CARRIERS (§ 93*)—CARRIAGE OF GOODS—LIABILITY FOR MISDELIVERY.

Where a bill of lading, on the margin of which were printed the words "not negotiable," stated that, if the word "order" was written immediately before or after the consignee's name, a surrender of the bill of lading properly indorsed would be necessary before delivering the property at destination, and, if any other form of assignment was used, the carrier might deliver without requiring its production, a carrier would be liable to the owner of freight for damages caused by delivering freight without the production of the bill of lading, where the word "Order" was written before the consignee's name.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 356; Dec. Dig. § 93.*]

Action by the Canandaigua National Bank against the Southern Railway Company. Judgment ordered for plaintiff.

Hamlin & Hamlin (Myron D. Short, of counsel), for plaintiff.

Stetson, Jennings & Russell (E. A. Nash, of counsel), for defendant.

SUTHERLAND, J. For three years before this cause of action arose the Manchester Produce Company had purchased apples in

Ontario county, N. Y., for the joint account of said company and John W. Neumann & Co., produce dealers at Indianapolis, during all of which time the Manchester Produce Company advanced money for apples so purchased. When the apples were loaded and shipped, bills of lading were made, wherein generally J. W. Neumann & Co. were named as consignors; the directions to deliver being to the order of J. W. Neumann & Co., consignees. Neumann & Co. were named as consignors at their own request, as many of these shipments went to their customers throughout the country, and Neumann & Co. advertised the place of shipment as one of their purchasing stations on their billheads. The established custom, however, was for the Manchester Produce Company, when it shipped a car of apples thus consigned, on which it had advanced the purchase price, to draw upon J. W. Neumann & Co. for the amount thus advanced, and to discount the draft at the plaintiff's bank, delivering the bill of lading without indorsement to the bank as collateral security for the payment of the draft. This course of dealing having gone on for three years without question, in December, 1907, the Manchester Produce Company purchased a car of apples for the joint account of themselves and Neumann & Co., advancing the money therefor, and shipped the same from Farmington via the Lehigh Valley Railway to Knoxville, Tenn., taking a bill of lading in which J. W. Neumann & Co. were named as consignors, the consignee being described as follows:

"Order.
"Consignee:   John W. Neumann & Co.
              "Notify Neal & Ragsdale.
"Destination:        Knoxville,
                     Tenn.
"Route:       Great Southern Despatch."

On the margin of the bill of lading appears the following, in print:

"Not Negotiable.

"If the word 'Order' is written immediately before or after the name of the party to whose order the property is consigned, the surrender of the Bill of Lading, properly endorsed, shall be required before the delivery of the property at destination, as provided by Section 9 of the Conditions of the Uniform Bill of Lading, on the back hereof."

On the back of the bill of lading, as one of the conditions printed thereon, appears the following:

"(9) If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of a party to be notified of the arrival of the property, the surrender of this bill of lading properly endorsed shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier, be delivered without requiring the production or surrender of this bill of lading."

December 18, 1907, the Manchester Produce Company drew its sight draft on Neumann & Co. for $430.69, being the amount paid by them for the apples on said car, and on the same day the draft was discounted by the plaintiff; the bill of lading being attached thereto

and delivered without indorsement by the Manchester Produce Company to the plaintiff as collateral security for the payment of the draft. The amount of this discount was passed to the credit of the Manchester Produce Company, which drew upon the amount thus deposited from time to time. Neumann & Co. declined to accept and pay the draft when presented, but on the written order of Neumann & Co. the defendant railroad, which had received the apples for transshipment as a connecting carrier, delivered the car to Neal & Ragsdale without requiring the production of the bill of lading, Neal & Ragsdale paying Neumann & Co. for the apples. Neumann & Co. refused to pay for the apples, claiming that the Manchester Produce Company was indebted to them in an amount exceeding the value of the apples in said car, whereupon this action was commenced to recover the damages sustained by the bank for the delivery of the apples without the production of the bill of lading.

From the course of business pursued for three years without question it is clear that the Manchester Produce Company was authorized to deposit the bills of lading drawn as this one was as collateral to its drafts drawn upon Neumann & Co. Evidently it was understood between them that the Manchester Produce Company could negotiate bills of lading drawn in this form. The Manchester Produce Company transferred the title to the apples in shipment to the plaintiff by assigning the bill of lading without indorsing the same. Bank of Rochester v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; Merchants' Bank v. U. R. R. & T. Co., 69 N. Y. 373. And the right of the bank to sue Neumann & Co. for converting the carload of apples would seem to be clear. Bank of Rochester v. Jones, supra; Marine Bank v. Wright, 48 N. Y. 1; Commercial Bank v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311. But this action is against the carrier for delivering the goods without the production of the bill of lading, and there is no evidence that the carrier knew that the bill of lading had been assigned to the plaintiff. Section 633 of the Penal Code makes it a misdemeanor for a common carrier to deliver goods for which a bill of lading has been issued without the production of the bill of lading, unless the words "Not Negotiable" are written or stamped upon the bill. Those words are printed upon this bill, and accordingly no right of action arises out of that section of the Penal Code. But, notwithstanding the words "Not Negotiable" which are printed upon this bill of lading, it is made to the order of J. W. Neumann & Co. The goods were not billed "straight," and the language of the bill of lading makes it negotiable in the sense in which bills of lading are negotiated as security for advances upon shipments such as this was; and immediately following the words "Not Negotiable" is the positive statement that the surrender of the bill of lading, properly indorsed, shall be required before the delivery of the property, pursuant to section 9 of the conditions on the back of the bill; and section 9, quoted above, is an unqualified assertion that, if the word "order" is written on the bill before the name of the consignee, the surrender of the bill, properly indorsed, shall be required before the property is delivered, and, if any other form of consignment is used, it shall be optional with the carrier to deliver the property with or without a surrender of the bill of lading.

Now, these conditions are not only for the protection of the carrier, but they afford an assurance to bankers to whom application may be made for advances upon the security of the bills of lading that the conditions expressed therein will be respected by the carriers; and in my opinion a cause of action exists here in favor of the plaintiff against the defendant for the delivery of the apples in question without the production of the bill of lading. The condition of delivery printed on the bill of lading requires the indorsement of Neumann & Co., but it is not necessary to consider whether the carrier could have refused to deliver the apples to the plaintiff without the indorsement of Neumann & Co. on the bill of lading, as the carrier delivered the apples to Neal & Ragsdale without requiring any bill of lading to be produced, and before any demand was made on behalf of the plaintiff, thereby committing an actionable wrong against the plaintiff, which undoubtedly had acquired title to the apples by the transfer of the bill unindorsed.

It is stipulated that the apples were worth at least the amount of the draft; and accordingly judgment is ordered for the plaintiff in the sum of $430.69, with interest from December 18, 1907.