at law and claimed damages under the statute. These would undoubtedly have been assessed in the light of plaintiff's conduct which was the inducing cause of the defendant's alleged illegal use of her picture. She has chosen, instead, to seek equitable relief in the expectation undoubtedly that the interlocutory judgment granting an injunction would be an adjudication of impelling force and result in an increased award of damages against defendant. That election requires me to act as a court of equity should and to deny the plaintiff the remedy she has sought.

Judgment will be for the defendant, dismissing the complaint, with costs.

Judgment dismissing complaint.

---

## CANANDAIGUA NAT. BANK v. CLEVELAND, C., C. & ST. L. RY. CO.

(Supreme Court, Appellate Division, Fourth Department. January 15, 1913.)

CARRIERS (§ 57*)—CARRIAGE OF GOODS—BILL OF LADING—DUTIES OF CARRIER.
 Where the owner takes a bill of lading, "Order of (consignee), notify" C., and attaches a draft to the bill of lading and delivers it to a bank for value, the title to the goods passes to the bank, and the carrier is liable to the bank for conversion, if it delivers the shipment without surrender of the bill of lading; the fact that the consignor and consignee were the same not altering the contract obligations of the carrier as expressed in the bill of lading.

 [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 169–178; Dec Dig. § 57.*]

 McLennan, P. J., dissenting.

Appeal from Supreme Court, Trial Term, Ontario County.

Action by the Canandaigua National Bank against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Daniel M. Beach, of Rochester, for appellant.
Arthur S. Hamlin, of New York City, for respondent.

LAMBERT, J. This action involves the value of a car load of apples, shipped from Farmington, N. Y., to Terre Haute, Ind. The shipment originated upon the Lehigh Railroad, and the defendant was the delivering carrier. The apples were loaded by the Manchester Produce Company, which concern owned the fruit, having collected and purchased same in the vicinity of Farmington.

Through a pre-existing arrangement, this fruit was to be shipped to John W. Neumann & Co., a copartnership, which was to market the apples, first remitting to the Produce Company the cost price thereof, and ultimately the Produce Company and Neumann & Co. were to share equally in any profits of the venture. Similar practices had been engaged in by these two business concerns prior to this particular

shipment. At the request of Neumann & Co. and in pursuance of prior arrangements, and for the purpose of facilitating the marketing of these apples, this car was billed out as though Neumann & Co. were the shippers. They were named in the bill of lading as consignors. As between these two concerns, at least, this manner of shipment was not intended to evidence any change of title to the property, but was merely adopted for convenience. The actual title to the apples still remained in the Produce Company.

In the bill of lading, the consignees were named as follows: "Order John W. Neumann & Co. Notify Dan Case." This manner of naming the consignees, under the terms of the instrument had a particular significance. Upon the face of the bill of lading and across the end thereof, in heavy type, is printed:

"If the word 'order' is written immediately before or after the name of the party to whose order the property is consigned, the surrender of the bill of lading, properly endorsed, shall be required before the delivery of the property at destination, as provided by section 9 of the conditions of the uniform bill of lading, on the back hereof."

And on the back of this instrument, and by said section 9, it is provided:

"If the word 'order' is written hereon immediately before or after the name of the party to whose order the property is consigned, without any condition or limitation other than the name of a party to be notified of the arrival of the property, the surrender of this bill of lading, properly endorsed, shall be required before the delivery of the property at destination. If any other than the aforesaid form of consignment is used herein, the said property may, at the option of the carrier be delivered without requiring the production or surrender of this bill of lading."

It is to be observed that this contract is definite and certain in its terms, and the obligations and rights of the carrier therein clearly expressed. That this shipment was within those express provisions is not controverted.

After initiating this shipment and receiving this bill of lading, the Manchester Produce Company attached to the bill of lading a draft, drawn upon Neumann & Co. for the cost price of these apples, and then sold the draft and bill of lading to the plaintiff. The draft and bill of lading were in the due course of business presented for payment to Neumann & Co., and such payment was refused, upon the claim made that the Produce Company was then largely indebted to Neumann & Co.

Upon the arrival of this car at destination, the defendant, upon the written order of Neumann & Co., delivered same to "Dan Case," who was named therein to be notified of its arrival without requiring the production, indorsement, or surrender of the bill of lading. Upon this state of fact plaintiff brings this action for conversion. It must be conceded that the defendant breached the contract of carriage by not complying with its provisions, and, further, that conversion is the proper remedy, if any exists in plaintiff. The sole question presented, of consequence, is whether plaintiff is in a position to assert the contract obligation of the bill of lading as against the defendant.

This manner of shipping property has the sanction of usage, and,

based upon the carrier's agreement to require the surrender of the original bill of lading, a commercial practice has become established, whereby the shipper is enabled, through banking institutions, to secure the value of the property consigned, in advance of its delivery at destination by the sale ·or pledge of the bill of lading. Such sale or pledge, in effect, secures the value advanced by pledging the property represented thereby. Such a course of commercial dealing has long had the sanction of our courts. It has been uniformly held that the transfer of the bill of lading transfers the title to the property represented thereby, and that such transfer of the bill of lading may be by mere delivery thereof when such is the intention. City Bank v. R. W. & O. R. R. Co., 44 N. Y. 136; Commercial Bank v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311; Leinkauf Co. v. Grell, 62 App. Div. 278, 70 N. Y. Supp. 1083; Canandaigua Bank v. Southern Ry. Co., 64 Misc. Rep. 327, 118 N. Y. Supp. 668. It is also well settled that the bill of lading is valid and enforceable in the hands of a bona fide transferee in all its terms and provisions. Merchants' Bank v. U. R. R. & T. Co., 69 N. Y. 373; Nat. Com. Bank v. Lackawanna Co., 59 App. Div. 270, 69 N. Y. Supp. 396.

The only question remaining is whether the sale by the Manchester Produce Company to plaintiff transferred any title. We can discover no reason why it did not. The Produce Company was concededly the owner of the apples. It had bought and paid for them. It had not transferred the title to any other person, and its right to effect a sale thereof was unlimited except that such sale was required to be subject to its contract for the transfer of such title to Neumann & Company, upon payment of the draft. The title of the Produce Company being complete, there was no restriction upon its right to sell the same, and that object was accomplished by the transfer of the bill of lading. The bank was then in a position to insist upon all the carrier's obligations, as expressed in the bill of lading.

Nor does the fact that the Produce Company named Neumann & Co. as consignors have any effect upon the status of the parties. Such fact did not work to the detriment of the carrier in any manner, and hence no estoppel could arise. The bill of lading makes no restriction upon the shipment in the name of the consignee instead of the consignor. Under its plain provisions, even if Neumann & Co. had actually initiated the shipment, its obligation to require the surrender ·of the bill of lading remained unchanged. Under such circumstances, the rights of third parties were just as likely to intervene shipment and delivery. In fact, it is not an infrequent practice for the consignor of goods to ship them to his own order, with an accompanying direction to notify third parties, and then to dispose of the bill of lading to banking institutions, as was done in this case, thus securing his money for the shipment in advance of its delivery. Such a transaction is evidenced and sustained by the case of National Commercial Bank v. Lackawanna Company, supra. It will thus be seen that the naming of Neumann & Co. as consignors did not affect the contract obligation of the carrier. The only safe course for the carrier was to observe its contract. By so doing it could sustain no loss, while by its violation it would necessarily defeat the intervening property rights

of third persons, who might deal with the bill of lading, upon the faith of the agreement of the carrier to require its production before making delivery. This is equally true, whether the railroad supposed Neumann & Co. to be the consignors or not. It cannot be said that the delivery in this instance was induced, in any way, by the manner in which this shipment was made. The carrier chose to violate the plain obligation it had assumed and with entire disregard to the rights of the plaintiff. Because of such delivery the defendant was unable to surrender the property to the plaintiff and a conversion thereby arose, for which the defendant should be held liable.

The judgment appealed from should be affirmed, with costs. All concur, except McLENNAN, P. J., who dissents.