Siegel Cohen and Another, Appellants, v. John Curtin, Inc., Respondent.

(Supreme Court, Appellate Term, First Department, June, 1919.)

Contracts — provisions of — delivery and acceptance of bills of lading constitute a delivery of the goods — shipment of goods — evidence — railroads.

> Where a contract of sale provides "Terms net 10 days. On way to New York. No freight allowance" and the plaintiffs, the broker who negotiated the sale and another of defendant's witnesses testify that this meant that the term of credit was to begin at the time the goods were actually shipped and on the way to New York, an interpretation by the trial judge that it meant that the goods were on their way to New York at the time the contract was made, is not sustained by the evidence.

> The court will take judicial notice that the railroads of the country were under government control in the fall of 1918 and that great delays in transportation were apt to occur, but it cannot be assumed in regard to any particular shipment that its delay was caused by war conditions. If such is the fact it must be proved.

> The delivery and acceptance of bills of lading constitute a delivery of the goods and a vesting of title thereto and where the purchaser retains the bills of lading for more than a reasonable time without objection he cannot later urge that the goods were shipped at a later date than called for by the contract.

> Where upon receipt of bills of lading the purchaser signs receipts not for the bills themselves but for the goods covered by them, it is clear that the parties intended that delivery of the goods should be made merely by delivery of the bills of lading.

> Where a contract of sale provided that deliveries were to be made in "two to four weeks" and the seller delivered to the purchaser bills of lading for the goods some more than five weeks after the signing of the contract, which bills the purchaser retained without objection for more than a reasonable time, and it was the intent of the parties that delivery of the bills of lading should be delivery of the goods, the purchaser may not later return the bills of lading and reject the goods although there are delays in transit.

Where the purchaser does return the bills of lading and attempts to reject the goods the seller, under his right of lien for the unpaid purchase price, is entitled to sell the goods and recover the difference between the amount realized and the contract price, and a judgment dismissing the complaint will be reversed.

APPEAL by the plaintiffs from a judgment of the Municipal Court of the city of New York, borough of Manhattan, seventh district, in favor of defendant.

Lewis & Schaap (L. S. Lewis, of counsel), for appellants.

Joseph P. Nolan, for respondent.

GUY, J. Plaintiffs, appellants, sue to recover the difference between the amount realized in a re-sale of merchandise alleged to have been sold for defendant's account and the contract price of same, bills of lading for said goods having been delivered by plaintiffs to the defendant and retained by the defendant for a period of ten days after receipt of one bill of lading and twelve days after the receipt of the other bill of lading.

The contract under which the goods were sold reads as follows: On one line " Terms net 10 days. On way to New York. No freight allowance; " on the next line " Delivery two to four weeks," and on the next line " Subject to delays, embargoes and other war hazards. War hazards at purchaser's risk."

It is conceded that the goods were not actually in transit to New York on the date of the contract, September 10, 1918, the two bills of lading delivered to defendant being dated respectively October 2 and October 5, 1918. On October seventh plaintiffs mailed to defendant an invoice for part of the goods, showing

" Ship direct from mills. B/L to follow," and on October eighteenth, with the bill of lading, delivered the invoice of the balance of the merchandise, stating " Ship direct from mills. B/L attached."

One of the main controversies on the trial was as to the meaning of the words " Terms net 10 days. On way to New York." The learned trial justice construed said clause to be a representation that the goods were on the way to New York at the time of the making of the contract. This construction, in the light of the expert evidence, is not sustained by the evidence. It is clear that the use of the expression " On way to New York " under the head of terms, meant, as contended by plaintiffs and supported by the evidence of the broker who negotiated the contract and by another of defendant's witnesses, that the term of credit was to begin at the time the goods were actually shipped and on the way to New York. The contract provided that delivery was to be made within two to four weeks from the date of the contract, with the modification that the agreement to deliver within two to four weeks was " Subject to delays, embargoes and other war hazards. War hazards at purchaser's risk." The court will take judicial notice of the fact that at that time the railroads of the country were under the control and management of the Federal government, and that owing to the necessities of war requiring precedence in shipments of troops and munitions of war, great delays were apt to occur; but plaintiffs failed to submit evidence tending to show that the delay in the shipment of the goods in question was due to war conditions or the control of the railroads by the government, and without proof on this point it could not be assumed that such was the fact; but this question would only be important had defendant refused to receive or accept the goods.

The serious controversy in the case arises over the fact of the acceptance of the bills of lading after the expiration of the term " two to four weeks " within which deliveries were to be made under the contract, and the retaining of the bills of lading for a period of more than ten days without any notice to plaintiffs of refusal to accept the goods because of the delay in delivery. The delivery and acceptance of the bills of lading constituted a delivery of the goods and a vesting of title thereto in the defendant " subject to the terms of any agreement with the transferror." Sales Law, chap. 571, Laws of 1911, § 115. " The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them." Id. § 129.

" In the eye of the law, the transfer of the bill of lading is regarded as an actual delivery and an actual change of possession of the property." *Commercial Bank of Keokuk* v. *Pfeiffer,* 108 N. Y. 242, 250. See, also, *Canandaigua Nat. Bank* v. *Cleveland, C., C. & St L. R. Co.,* 155 App. Div. 53, 55.

That it was the intent of the parties to the contract that delivery of the goods should be made by merely delivering the bills of lading, is borne out by the fact that on receipt of each bill of lading the defendant herein signed a receipt, not for the bill of lading, but for the goods in good order as set forth in the bills of lading.

The evidence establishes, therefore, that there was by reason of the acceptance and retention of the bills of lading for more than a reasonable time an accept-

Appellate Term, First Department, June, 1919.   [Vol. 107.

ance of the merchandise so delivered and a waiver of any right of rejection on the ground of delay. *Brown v. Bard,* 64 Misc. Rep. 249, 256; *Richardson v. Levi,* 69 Hun, 432.

After the return of the bills of lading and the attempted rejection of the goods by the defendant, plaintiffs under their right of lien for the unpaid purchase price were entitled to sell the goods and recover from the defendant the difference between the amount realized on the re-sale and the contract price.

The judgment must, therefore, be reversed, with thirty dollars costs, and judgment directed in favor of plaintiffs for the full amount claimed, with interest, and costs in the court below.

BIJUR and MULLAN, JJ., concur.

Judgment reversed, with thirty dollars costs.