## The Empire Transportation Co. *versus* Steele.

1. Thompson, in Pennsylvania, shipped oil by a transportation company to Saxton in New York, and received bills of lading which were endorsed to Steele as security for money advanced to Thompson, on his drafts on Saxton. The drafts were dishonored; the company refused to deliver the oil to Steele, because Saxton owed them freight. *Held*, in a suit by Steele against the company, evidence that the oil was Saxton's was admissible.

2. Steele by endorsement of the bills took only the title to the oil which Thompson had.

3. Secondary evidence insufficient in this case to admit proof of the contents of a writing.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Forest county* : No. 1, to October and November Term 1871.

This action, commenced September 20th 1869, was brought by A. H. Steele, cashier of the Tionesta Bank, against the Empire Transportation Company, to recover the amount of money advanced by the plaintiff to A. J. Thompson, as security for which Thompson endorsed to the plaintiff four bills of lading of oil from the defendants to Thompson, numbered respectively 1425, 1426, 1539 and 1673. The money advanced was on two drafts, dated January 6th 1869, at five days' sight, drawn by Thompson on L. D. Saxton, of New York, the consignee in the bills of lading; one draft was for $788.30, and the other for $726.

On the trial, May 27th 1870, before Campbell, P. J., the bills of lading Nos. 1539 and 1673 were produced, and plaintiff proved that he had advanced the money to Thompson on the drafts, and that *all* the bills of lading had then been transferred by Thompson to him.

Steele, the plaintiff, testified that the two other bills of lading, 1425 and 1426, had been delivered by Thompson at the same time, and had been forwarded to the Importers' and Traders' National Bank.

The plaintiff then read the deposition of C. M. Myers, the clerk of Saxton, who testified that four car-loads of oil had been shipped by Thompson, consigned to Saxton; that drafts had been drawn on bills of lading 1425 and 1426; accompanying the bill of lading was a draft; "we always got a bill of lading when a draft was paid;" these drafts were protested. The oil in the four bills of lading arrived in New York, but had never been received by Saxton; the delivery was refused because Saxton owed the defendant an outstanding account for freight, not wholly for this lot of oil. Saxton tendered McCorkle, the agent of the company, the freight due on this lot. The drafts were not paid by Saxton, because the defendants refused to deliver the oil. He testified also : " I have

[Empire Transportation Co. *v.* Steele.]

made diligent search for the bills of lading for cars 1425 and 1426, and have been unable to find them. I cannot say whether the bills of lading were ever in Mr. Saxton's possession or not, but have seen them."

The deposition of Saxton was read; in it he testified: "These bills of lading were in my possession in the city of New York. During my absence and sickness I do not know what has become of them, but believe they have been lost. My book-keeper made search for them at my request, and they have not been found by him. I do not know now where they are."

The defendant then offered to prove the contents of the bills of lading, 1425 and 1426.

The offer was objected to by the defendants, received by the court, and a bill of exceptions sealed.

The plaintiff gave evidence of the contents of the bills of lading and other evidence of the demand by him and Saxton on the defendants for the oil, and their refusal to deliver; also evidence of the quantity and value of the oil.

The defendants gave evidence that Thompson had shipped oil to "L. D. Saxton, Agent, New York," by their line, in two cars, Nos. 1539 and 1673, containing together 155 barrels of oil; they arrived at Communipaw, the point of delivery of New York oil; the freight on these barrels was $432: it had not been paid; the value of the oil was about $1200; no freight was ever paid or tendered for this oil; when these cars arrived Saxton owed the defendants $3446.20 for freight, exclusive of that due for these cars; no bill of lading was ever presented to the defendants endorsed to plaintiffs, or endorsed in any way. When the plaintiff demanded the oil, he produced no bill of lading and offered no money, but said he was Mr. Steele, and claimed the oil shipped in two cars by Thompson to Saxton, "agent;" he claimed no particular cars.

The defendants called Thompson, who testified: "I bought the oil in my own name."

The defendants proposed to show by the witness that the oil was bought by him for Saxton, and that his (Thompson's) interest was five cents commission on each barrel, and that Saxton paid for the oil.

This was objected to by plaintiff and excluded, and a bill of exception sealed.

The court affirmed the plaintiff's third point, viz.: "The measure of damages is the value of the oil in New York at the time of demand and refusal, with interest upon such sum from that date."

The verdict was for the plaintiff for $2551.50; the plaintiff remitted all over $1674.54, for which sum judgment was entered, and the defendants sued out a writ of error.

They assigned for error :—

1. Admitting proof of the contents of bills of lading 1425 and 1426.

2. Affirming the plaintiff's point.

3. Excluding the evidence proposed to be given by Thompson.

*J. R. Clark* and *W. E. Lathy*, for plaintiffs in error, cited as to 1st assignment : 1 Greenleaf's Ev., § 558 ; Parks *v.* Dunkle, 3 W. & S. 291 ; Hemphill *v.* McClimans, 12 Harris 367.

As to 3d assignment : Angell on Carriers, § 49 ; Arbuckle and Thompson *v.* Colburn, 1 Wright 176.

*M. P. Davis* and *S. N. Pettis*, for defendant in error, cited as to 1st error, Carland *v.* Cunningham, 1 Wright 228 ; Graff *v.* P. & St. L. Railroad, 7 Casey 489. As to the 3d error, Angell on Carriers, §§ 495, 496, 499.

The opinion of the court was delivered, January 9th 1872, by

THOMPSON, C. J.—We shall notice the third assignment of error first.   It presents the most material point in the case.

Neither party has furnished us with a copy of the bills of lading in the case, and they are the instruments out of which this controversy has arisen.   We must presume, therefore, that they are in the ordinary form of such instruments, without special or unusual exceptions or provisions.

A. J. Thompson, it appears, was the shipper of the oil in controversy, and shipped by the Empire Transportation Company. Bills of lading were delivered to him for the oil, which was consigned by him to one Saxton, *agent*, in New York, he paying freight. Thompson drew two drafts on him, which were discounted by the plaintiff's bank, and he assigned as collateral the bills of lading.   If Thompson was the owner of the oil at the time, it is not to be doubted but that the assignment passed the property in the oil to the plaintiff.   But if he was not, what interest in it did the assignment pass ?   Lord Loughborough, in Mason *et al. v.* Lichlarrow, 6 East 21, delivering the opinion of the Exchequer Chamber, held that the endorsement of bills of lading had never been regarded in the commercial law as resting on the footing of bills of exchange, or other strictly commercial paper ; that inquiry was a duty, and consequently that the endorsee took such paper on the credit of the endorser.   So is the case of Kingsford *v.* Merry, 11 Exch, 577.   In the Mechanics' Bank *v.* The New Haven R. R. C., 3 Ker. 628, and in Mower *v.* Peabody, Id. 121, the same thing is contained, in the principle announced that as a bill of lading is a mere symbol, its delivery or negotiation produces no greater effect than would the delivery of the goods it represents, and that the right conferred by the endorsement will

[Empire Transportation Co. v. Steele.]

be limited to that which might have been exercised by the endorsee had the goods themselves been transferred instead of the bill. That principle is also recognised in Decan v. Shipper, 11 Casey 239; also in Schumacher v. Eby, 12 Harris 521. It must be remembered, that we are here speaking of the general commercial law, without reference to our factor act, or to the act approved 24th September 1866. It is well known that there being no market overt in this state, or in New York, had the oil been delivered to plaintiff in fact, he would have taken only such title as Thompson had, and any party having a right to contest that title would be authorized to show that he had none. That was what defendants proposed to do, as to the transfer of the bills. If the one is only the equivalent of the other in vesting title, it must follow that the offer should have been received. If Thompson had no title, the bank got none. The question was raised by a party legally claiming the oil for unpaid freights. It seems unquestioned that they had this right, for the plaintiffs claiming it, tendered the balance due defendants on that score. Had the testimony been admitted, it is possible that the plaintiff might have shown such a state of facts arising out of the conduct of Thompson and Saxton as would have been in law equivalent to title. But we cannot say how that may be, or what new aspects the case may assume on another trial. We can only treat of the exception as it appears, and we think it is sustained.

On the question of the secondary evidence to supply the lost bills of lading, the proof of search was, in my opinion, deficient. It was made by Saxton's clerk only. Had the testimony clearly shown that they had been received by Saxton, and the proof had shown a diligent search among his papers by the clerk, this, with Saxton's testimony that he had them not, and that they were lost, might have been sufficient; but the clerk does not say whether he searched among Saxton's business-papers or not. He only says he made diligent search for them. Saxton made none at all. If a paper be traced to a custodian and is lost, as a general thing, his search is all that is required. In addition, the depositor or owner of the paper ought to be asked to purge himself of its possession. We notice this as the case goes back for another trial. Standing alone, we perhaps would not, under the circumstances of the case, reverse on this ground; for the presence of the bills of lading could not be said to have been of vital importance. So thought, no doubt, the learned judge. But more care should be taken on another trial.

For the reasons given on the 3d assignment of error, this judgment is reversed. We see no other error in the case.

Judgment reversed, and new trial awarded.