TURNBULL v. MICHIGAN CENTRAL RAILROAD CO.

1. PLEADING—PARTNERSHIP—NAMES—FICTITIOUS NAME.

Under Circuit Court Rule 7, the defense, in an action for wrongful delivery of freight by a carrier, that plaintiff is a partnership, engaged in business under an assumed or fictitious name, in violation of Act No. 101, Pub. Acts 1907 (2 How. Stat. [2d Ed.] § 2626 *et seq.*), is an affirmative defense and requires a special notice with the plea of the general issue.

2. CARRIERS — BILL OF LADING — FREIGHT — DELIVERY TO WRONG PERSON.

While it is true that the consignee is *prima facie* the owner of goods forwarded by common carrier, the carrier surrenders the freight to a third person, at its peril, on the order of the consignee, contrary to shipping instructions contained in an order form bill of lading, and is liable to a bona fide holder of the bill of lading, if the carrier did not require that the instrument be surrendered before delivery of the goods, or to the owner of the freight if he thereby loses the price.

3. SAME—BILL OF LADING—SURRENDER.

The provision in the order bill of lading that the goods shall not be delivered without the surrender of the bill of lading is not intended for the sole benefit of the carrier.

Error to Lapeer; Smith, J. Submitted October 6, 1914. (Docket No. 5.) Decided December 18, 1914.

Case by Elgin Turnbull and another, copartners under the firm name of the Turnbull Elevator Company, against the Michigan Central Railroad Company for the misdelivery of freight consigned with draft annexed to the bill of lading. Judgment for plaintiffs. Defendant brings error. Affirmed.

*Cooley & Hewitt (Humphrey, Grant & Humphrey,* of counsel), for appellant.

*Geer, Williams & Halpin,* for appellees.

In this case a verdict was directed for the plaintiffs, the action being brought against the defendant as the initial carrier, under the Carmack amendment to the Hepburn act, for the wrongful delivery of 250 bags of beans by the terminal carrier, the Evansville & Terre Haute Railroad Company. The consignment of beans was delivered to the agent of the defendant at Lapeer, Mich., and the bill of lading issued by the defendant was the regular order form blank, in terms being as follows:

"MICHIGAN CENTRAL RAILROAD COMPANY.
"Order Bill of Lading—Original.
"Received, subject to the classifications and tariffs in effect on the date of issue of this original bill of lading, at Lapeer, May 22, 1912, from ........ the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns.
"The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by this bill of lading will not be permitted unless pro-

vided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper.

"The rate of freight from —— to —— is in cents per 100 lbs.

"Consigned to order of A. J. Thompson Co.

"Destination:  Evansville, State of Ind.

"Notify A. J. Thompson Co.

"At Chicago.

"Route:  C. & E. I.; E. & T. H.  Car Initial: 46254.

"Car No. ...... L. S. ......

"No.     Description of Articles          Weight
"Packages   and Special Marks       (Subj. to Corr.)
"250     Bags Beans                         41250
            "S L & C
       "Allow Inspection
            "1330 Lapeer, Mich. 3
   [Signed]    "TURNBULL ELEVATOR CO., Shipper,
                   "Per D. P. S.
               "A. G. BARBER, Agent,
                   "Per O."

The plaintiffs drew a draft upon the A. J. Thompson Company for the purchase price, attached it to the bill of lading, and deposited both in the bank for collection; the bank crediting plaintiffs' account with the amount of the draft.

The consignment moved forward over the lines of the defendant, was delivered by it to the Chicago & Eastern Illinois Railway; and was carried by it and the Evansville & Terre Haute Railroad Company to the destination.  Upon arrival there the consignee was notified by the terminal carrier, and an order was given Ragon Bros. allowing them inspection of the consignment, which was granted by the terminal carrier.  The following order was then given by A. J. Thompson Company:

"CHICAGO, June 3, 1912.

"E. & T. H. R. R. Co.:

"Please deliver  Parsons & Scoville Co. 250 bags

beans out of car 46254 without surrender original bill lading, on payment of chgs.

"ARTHUR J. THOMPSON CO.
"per ZINIA."

Upon surrender to it by Parsons & Scoville Company of this written order of the consignee (the A. J. Thompson Company), and upon receipt of confirmation of that order by both telegram and letter signed by said consignee, the terminal carrier delivered the consignment in accordance with the order of the consignee to Parsons & Scoville Company without surrender of the original bill of lading. The bank being unable to make collection of the draft from the A. J. Thompson Company, the consignee, the draft and the original bill of lading were returned to the plaintiffs, and their account in the bank was charged with the amount of the draft. As a result this litigation was instituted.

KUHN, J. (*after stating the facts*). As a preliminary question it is contended that, the plaintiffs being copartners doing business as the Turnbull Elevator Company, there had not been a sufficient compliance with Act No. 101, Public Acts of 1907 (2 How. Stat. [2d Ed.] § 2626 *et seq.*), so as to permit plaintiffs to maintain this suit. Irrespective of whether there was in this case a sufficient compliance with the statute, we are of the opinion that the defendant is not in a position to urge this defense, as there was no notice to that effect given with the plea. This defense is clearly an affirmative defense, and unless pleaded it must be considered that it was waived. Circuit Court Rule 7 (*b*) provides:

"An affirmative defense, such as payment, release, satisfaction, discharge, license, fraud, or failure of consideration in whole or in part, and any defense which by other affirmative matter seeks to avoid the

legal effect of or defeat the cause of action set forth in plaintiff's declaration, must be plainly set forth in a notice added to the defendant's plea.   The signature of the defendant's attorney following such a notice shall be a sufficient signing of both the plea and the notice."

This defense is affirmative matter upon which defendant relies "to defeat the cause of action set forth in plaintiff's declaration."   It is true that in *Cashin* v. *Pliter,* 168 Mich. 386 (134 N. W. 482, Ann. Cas. 1913C, 697), under the plea of the general issue, this court passed on the merits of the question, but an examination of the records and briefs in that case shows that it was not brought to the attention of this court, and the question of whether it was necessary to specially plead this defense under Rule 7, *supra,* was not decided.   It has been held in other jurisdictions that the defense that the plaintiffs are doing business under an assumed name without having complied with a statute such as Act No. 101 is an affirmative defense and is waived unless pleaded in the answer. *Carlock* v. *Cagnacci,* 88 Cal. 600 (26 Pac. 597) ; *California Savings & Loan Society* v. *Harris,* 111 Cal. 133 (43 Pac. 525) ; *Vaughan* v. *Kujath,* 44 Mont. 484 (120 Pac. 1121) ; *Reilly* v. *Hatheway,* 46 Mont. 1 (125 Pac. 417) ; *Bowman* v. *Harrison,* 59 Wash. 56 (109 Pac. 192) ; *Hale* v. *Transfer Co.,* 66 Wash. 459 (119 Pac. 837).

The other question which is before us is whether or not there was a misdelivery of this consignment of beans by the carrier in view of the shipping instructions of the consignor, as shown by their bill of lading.   It is contended by the defendant and appellant that this question is governed by the decision of this court in the case of *Nelson Grain Co.* v. *Railroad Co.,* 174 Mich. 80 (140 N. W. 486).   In that case a shipper consigned beans to his own order, notify X,

under a bill of lading with a surrender provision. Later, by means of a spurious bill of lading, he ordered the carrier to deliver to X, which the carrier did without requiring the surrender of the genuine bill of lading. The court said:

"Having made delivery of the shipments to the parties named in the bills of lading upon the order of Botsford and Barrett as directed in the bills, we think the defendant should be held to have performed its full duty in the premises."

In other words, the consignor-consignee, who had control of the goods and upon whose order they were to be delivered, ordered a delivery to X. The consignor-consignee thus waived his right and his protection under the surrender provision, and is estopped from asserting it against the carrier, which made the delivery as ordered.

I do not think it can be said that the stipulation in the bill of lading that the surrender thereof shall be required before delivery is solely for the benefit of the carrier, and we did not so hold in the *Nelson Grain Co. Case*, as it was there said:

"Whether the stipulation in the bill of lading that surrender thereof shall be required before delivery is considered to be for the benefit of the carrier or the shipper would seem in this case to make no difference, for the plaintiff was not the shipper."

It is manifestly for the benefit and protection of both shipper and carrier. But, while it affords a benefit to the carrier, the carrier certainly need not insist upon it when it would be fully protected in a delivery without a surrender.

In the *Nelson Grain Co. Case*, Mr. Justice BROOKE, in his opinion, also says:

"The bills of lading here considered are entirely unambiguous, and show conclusively that Botsford and

Barrett were the shippers, and that the shipments were made to their order."

And again:

"An examination of that paper (the bill of lading) shows that the plaintiff was an utter stranger to the transaction, except that as to the last bill its name appears beneath that of Botsford and Barrett, shipper, with the prefix 'per.' This can have but one meaning, viz., that the beans were shipped by Botsford and Barrett; the plaintiff acting for them in the transaction."

In the instant case the plaintiff is the consignor, and not a stranger to the transaction, and gave no order for the delivery of the beans, and so it cannot be said that the surrender provision in the contract of shipment, the bill of lading, was waived. Here the shipper placed his property in possession of the carrier, which gave him a bill of lading, making a contract between them which in most positive terms says that its surrender shall be required before the delivery of the property, and upon this agreement the shipper had a right to rely.

It is true that *prima facie* the consignee is the owner of the goods shipped, but it is equally true, and the rule is well established, that, when there is an order bill of lading outstanding, the carrier delivering the goods without requiring the presentation of the bill does so at its peril, and is liable to a bona fide holder thereof. This is sustained by the following decisions: *McEwen* v. *Railroad Co.*, 33 Ind. 368 (5 Am. Rep. 216); *The Thames*, 7 Blatchf. 226, Fed. Cas. No. 13,859; *First Nat. Bank of Clarkston* v. *Navigation Co.*, 25 Idaho, 58 (136 Pac. 798); *Merchants' Nat. Bank* v. *Steamboat Co.*, 102 Md. 573 (63 Atl. 108); *Canandaigua Nat. Bank* v. *Railway Co.*, 155 App. Div. (N. Y.) 53 (139 N. Y. Supp. 561);

*Barnum Grain Co.* v. *Railway Co.*, 102 Minn. 147 (112 N. W. 1030, 1049).

Because of this conclusion, we consider it unnecessary to discuss the question of the liability of the carrier under the provisions of the uniform bills of lading act, Act No. 165, Public Acts of 1911.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.