## KING et al. v. BARBARIN et al.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1917.)

### No. 3084.

1. CARRIERS ⬳177(3)—CARRIAGE OF GOODS—MISDELIVERY.
    Under the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. 1916, §§ 8604a, 8604aa]), the initial carrier of an interstate shipment is liable for a misdelivery by the terminal carrier.

2. CARRIERS ⬳52(1)—NATURE OF BILL OF LADING.
    A bill of lading is both a receipt and a contract of carriage and delivery.

3. CARRIERS ⬳83—BILLS OF LADING—DELIVERY.
    A delivery by a carrier to the consignee is made at the carrier's peril, where the consignee does not surrender the bill of lading.

4. CARRIERS ⬳59—BILLS OF LADING—HOLDERS.
    A carrier, by delivering goods to the consignee without the production of the bill of lading, becomes liable to a bona fide holder of the bill for value, whether by way of purchase or as security for advances before the delivery of goods at destination.

5. CARRIERS ⬳83—BILLS OF LADING—DELIVERY OF GOODS.
    Provision in a bill of lading to notify one other than the consignee does not warrant the carrier in delivering the shipment, save by order of the lawful holder of the bill of lading.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. CARRIERS ⬤➞83—DELIVERY—BILLS OF LADING.
    An actual indorsement by the consignee of a forged bill of lading affords a carrier no more protection than would be given by delivery directly to the consignee without production of any bill of lading.

7. CARRIERS ⬤➞82—BILLS OF LADING—CONSIGNEES—OWNERSHIP.
    Though the consignees were also named in the bill of lading as consignors, yet, where the carrier acknowledged receipt of the shipment, not from the consignors, but from the owners, the consignees were only prima facie owners of the goods shipped.

8. CARRIERS ⬤➞94(3)—OWNERSHIP OF GOODS—PRESUMPTION.
    The presumption of ownership arising from a bill of lading in which the consignee was named as consignor may be rebutted by other evidence showing the real ownership.

9. CARRIERS ⬤➞56—BILLS OF LADING—TRANSFER.
    Transfer of a bill of lading, without indorsement and with intent to pass title, is a constructive delivery of the property which it represents.

10. CARRIERS ⬤➞83—BILLS OF LADING—DELIVERY OF PROPERTY—OWNERSHIP.
    A bill of lading, instead of naming as consignors the sellers, who were the owners, named the consignee as consignor, and directed notice to a third person. The sellers attached to the bill of lading a draft drawn on the consignee, which was dishonored. The bill of lading recited receipt of the shipment, not from the consignors, but from the owners. Held that, as the presumption of ownership might be rebutted, and as the bill of lading represented the property, the carrier was not justified in conclusively presuming that the consignees were the owners, and in delivering the property without production of the original bill of lading, possession of which the consignees never secured, having dishonored the draft to which the bill of lading was attached.

11. CARRIERS ⬤➞83—CARRIAGE OF GOODS—ACTIONS—RECOVERY.
    In such case, the sellers having taken back from the bank their dishonored draft, drawn on the consignees, are entitled to recover from the carrier, despite an asserted lack of privity between the sellers and the carrier.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Petition by George F. Barbarin and O. A. Beach, doing business as Barbarin & Beach, against Paul H. King and Dudley E. Waters, receivers of the Pere Marquette Railroad Company. There was an order allowing petitioners' claim, and the receivers bring error. Affirmed.

Parker, Shields & Brown, of Detroit, Mich., for plaintiffs in error.
Thos. A. Conlon, of Detroit, Mich., for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

KNAPPEN, Circuit Judge. Defendants in error, whom we shall call petitioners, were in the grain and elevator business at Freeland, Mich. They sold to Botsford & Barrett, of Detroit, Mich., a carload of beans. On December 5, 1911, petitioners, under the direction of Botsford & Barrett shipped the beans, delivering the car to the Pere Marquette Railroad Company at Freeland, taking from the railroad's agent a standard form original order bill of lading (the draft of which was sent by Botsford & Barrett to petitioners), acknowledging receipt of

the car from the "owners." The bill of lading showed that the car was "consigned to the order of Botsford & Barrett, designation Pittsburgh, etc. Notify Arbuckle & Co. at same." At the foot of the bill of lading appeared the names of Botsford & Barrett as shippers. The bill of lading contained this express stipulation:

"The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property."

Petitioners had not received any payment on account of the car of beans, and on the delivery to them by the railroad company of the bill of lading attached it to a draft drawn by them on Botsford & Barrett, and placed the same in bank to their credit; the draft was sent on for collection and returned unpaid. Botsford & Barrett never had personal possession of the bill of lading. They, however, received from their customer, Arbuckle & Co., payment for the beans. The beans were never recovered by petitioners, their draft was never paid, and they lost the purchase price of the shipment.

The master, to whom were referred the issues raised under the petition filed by Barbarin & Beach in the railroad receivership case for reimbursement of the loss, found that the shipment was delivered by a connecting carrier upon a forged bill of lading, and allowed petitioners' claim. The exceptions to the master's report were overruled, and petitioners' claim allowed by the District Court for the value of the shipment, with interest and costs. As argued here, the case presents but the single question whether, under the facts, the carrier became liable for the sale price of the beans, by reason of their delivery without the surrender of the original bill of lading and in violation of its express terms.

[1] The general rule governing the obligations of common carriers as to delivery of freight are well settled and require little citation of authority. The difficulty lies in their application to the specific facts before us. It should go without saying that under the Carmack Amendment to the Interstate Commerce Act the initial carrier is liable for a misdelivery by the terminal carrier.

[2-4] The bill of lading was both a receipt and a contract of carriage and delivery (Cunard S. S. Co. v. Kelley [C. C. A. 1] 115 Fed. 678, 53 C. C. A. 310); and by the contract, including the express provision that the surrender of the bill properly indorsed should be required before the delivery of the shipment, the carrier agreed to transport the shipment to Pittsburgh and there deliver it to the consignee, or (if the bill had been transferred) to whomsoever should be the lawful holder of the bill. The well-settled rule in such cases is that delivery by the carrier to the consignee is made at the carrier's peril, unless, when made, the consignee surrenders the bill of lading. Union Pacific R. Co. v. Johnson, 45 Neb. 57, 65, 63 N. W. 144, 50 Am. St. Rep. 540. And see Furman v. Union Pacific R. Co., 106 N. Y. 579, 585, 13 N. E. 587.

And a carrier, by delivering goods to the consignee without the production of the bill of lading, is liable to a bona fide holder of the bill for value—whether by way of purchase or as security for advances—before the delivery of the goods at destination. Peoria Bank

v. Northern R. R. Co., 58 N. H. 204; Ratzer v. Burlington, etc., R. Co., 64 Minn. 245, 247, 66 N. W. 988, 58 Am. St. Rep. 530.

[5, 6] The provision for notifying Arbuckle & Co. did not mean that the shipment was to be delivered without the order of the lawful holder of the bill of lading (North v. Merchants' Transportation Co., 146 Mass. 315, 319, 15 N. E. 779); and an actual indorsement by the consignee of a forged bill of lading afforded the carrier no more protection than would be given by a delivery directly to the consignee without the production of the original bill.

[7-10] The question thus is: Were petitioners, as between themselves and the carrier, the lawful holders of the bill of lading, entitling them to be recognized as such? It is beyond question that, had petitioners been named in the bill as shippers, a delivery to the consignees without the production and surrender of the bill of lading would have rendered the carrier liable. The carrier contends, however, that by the delivery of the shipment to it upon a bill of lading in which Botsford & Barrett were named both as shippers and consignees petitioners became strangers to the transaction, and relinquished thenceforth all right of control over the beans; that the carrier had neither notice nor knowledge that petitioners intended to retain any control over or ownership in the shipment, and were therefore entitled conclusively to treat Botsford & Barrett as the owners and to deliver the shipment to their order, without requiring the surrender of the bill of lading. This proposition presents the pivotal question in the case.

In our opinion this contention fails to give due weight to the considerations that by the bill of lading the carrier acknowledged receipt of the shipment, not from the "consignors" in terms, but from the "owners"; that the consignees were only prima facie the owners of the beans, notwithstanding the shipment had been consigned to their order (Turnbull v. Mich. Central R. R. Co., 183 Mich. 213, 219, 150 N. W. 132); that "the presumption as to ownership arising from the bill may be explained or rebutted by other evidence showing where the real ownership lies" (The Carlos F. Roses, 177 U. S. 655, 665, 20 Sup. Ct. 803, 807, 44 L. Ed. 929); and that the actual owner of the goods was entitled to the benefit of the express provision of the contract that the shipment should not be delivered without the surrender of the bill of lading.

Petitioners were in fact owners of the beans at the time of their delivery to the carrier. The latter delivered to them a bill of lading which was the symbol of the property named therein. Its transfer to them by the consignors, without indorsement and with intent to pass the title, would have deprived the latter of control of the goods and have constructively delivered them to the former. Merchants' Bank v. U. R. R. & T. Co., 69 N. Y. 373, 379; Bank v. Railroad, 58 N. H. 203, 204. Under such delivery, with the intent stated, it would not be necessary to the protection of petitioners' rights that they give notice thereof to the carrier who held the property. Forbes v. Boston & Lowell R. R. Co., 133 Mass. 154, 156; Union Pacific R. R. Co. v. Johnson, 45 Neb. 57, 63 N. W. 144, 50 Am. St. Rep. 540. By the transaction in question Botsford & Barrett presumably acquiesced, to say the least, in pe-

titioners' retention of the bill. The fact of such retention, under the circumstances shown, was, in our opinion, evidence of an intent on the part of petitioners to hold the title until the beans were paid for, so far as necessary to secure such payment, and of the consent of Botsford & Barrett thereto. Merchants' Bank v. U. R. R. & T. Co., supra, at page 380. Under these circumstances, and in view of the practice of grain dealers to ship goods and collect therefor on draft accompanied by bill of lading, we think the carrier was not entitled, from the mere fact that Botsford & Barrett were named as shippers, conclusively to presume that petitioners had received payment for the beans, but was fairly charged with notice, not only that petitioners might at least not have received their pay, but of whatever claim they might turn out to have, so far as evidenced by their possession of the bill of lading.

[11] Had petitioners not taken back from the bank their discredited draft on Botsford & Barrett, the bank, in our opinion, would clearly be entitled to recover. This proposition finds express support in Canandaigua Natl. Bank v. Cleveland, etc., Ry. Co., 155 App. Div. 53, 139 N. Y. Supp. 561, affirmed 214 N. Y. 694, 108 N. E. 1091. There, as here, the owner and seller of the goods shipped took from the carrier a bill of lading in which the consignee was named as consignor, and negotiated at a bank a draft on the consignee for the purchase price, accompanied by the bill of lading. The case differs from the instant case, so far as seems important, only in the fact that the sellers did not take up the draft from the bank, and the suit was by the latter; but the decision was not rested upon the existence of rights in the bank superior to those of the seller of the goods and pledgor of the bill, but upon the proposition that the seller held the title and had the right to sell the same to the bank. Indeed, by the commercial law, as declared by the decisions of the Supreme Court and by the courts of the majority of the states, a bill of lading, while negotiable, is not so in the same sense as a promissory note; and the transferee for value, however innocent, must trace his title back to the owner and transferrer. Friedlander v. T. & P. Ry. Co., 130 U. S. 416, 425, 9 Sup. Ct. 570, 32 L. Ed. 991; Atchison, etc., Ry. Co. v. Harold, 241 U. S. 371, 377, 36 Sup. Ct. 665, 60 L. Ed. 1050; Douglas v. Bank, 86 Ky. 176, 179, 5 S. W. 420, 9 Am. St. Rep. 276; Empire Transportation Co. v. Steele, 70 Pa. 188. The asserted lack of privity between the seller and the carrier would apply to the Canandaigua Case, if applicable here. But there was, in our opinion, no lack of privity in the instant case between the carrier and the actual owners of the goods, clothed with the possession of the bill of lading for the protection of their rights. In our opinion the rights of petitioners are not made less than those the bank would have had from the mere fact that their ownership antedated the shipment, and that the bill of lading was retained by them for the express protection of their antecedent ownership and right to receive pay before parting with title. The nature of the contract has not been changed, nor has the carrier been injured, by the fact that Botsford & Barrett were named in the bill of lading as consignors. Had they actually made the shipment, the rights of others would still be likely to intervene, as, for example, those of subsequent

pledgees, to secure advancements, or those of petitioners, under actual delivery of bill of lading by Botsford & Barrett, to secure payment of their draft for the price of the beans. We think it clear that in the latter case petitioners would have been protected. We are not impressed that the protection is lost because their ownership antedated the shipment, and because the bill of lading was retained by them, instead of being manually turned over to them by Botsford & Barrett. Petitioner's loss is due directly to the carrier's failure to observe its contract.

We have not overlooked the decisions cited by defendants as directly sustaining their contention, viz., St. Louis Southwestern Ry. Co. v. Gilbreath (Tex. Civ. App.) 144 S. W. 1051, and Nelson Grain Co. v. Ann Arbor R. R. Co., 174 Mich. 80, 140 N. W. 486. What we have said indicates that we do not find these cases persuasive. While the facts in the Nelson Grain Company Case were practically the same as here, not only was the decision by a divided court, but the force of the majority opinion is to our minds affected to some extent by the later unanimous decision in Turnbull v. Mich. Central R. R. Co., supra, although the two decisions are readily distinguished.

In our opinion, the order of the District Court, allowing plaintiffs' claim, should be affirmed.