ALDERMAN BROTHERS COMPANY *vs.* THE NEW YORK,
NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

The rights and liabilities of the parties to an interstate shipment
are governed by the Federal Uniform Bills of Lading Act as
interpreted and construed by the Federal courts, and by the
terms of the bill of lading as accepted and applied by the same
tribunals.

A carrier is not obliged under the Federal Act (§ 8) to make deliv-
ery unless the bill of lading is produced and surrendered; and
if it be produced and surrendered by any of the parties desig-
nated in § 9, the carrier is justified in making delivery to him,
provided it is not chargeable with notice of any infirmity in
the holder's title.

Although the carrier is not expressly forbidden by the Act to deliver
without taking up the bill of lading, it does so at its peril;
and if actual loss, proximately caused by its failure to require
production and surrender of the bill, results, it is liable to the
injured party in an action of conversion.

If a carrier has lawful excuse for misdelivery, it must be affirmatively
pleaded and proved as matter of defense.

An initial carrier is liable for misdelivery by the terminal carrier,
since the bill of lading which the Act requires to be issued,
governs the entire transportation and fixes the obligations of
all participating carriers to the extent that its terms are ap-
plicable and valid.

The plaintiff loaned M $5,000 to finance the purchase of a quantity
of steel rails, a portion of which M sold to L who instructed
him to deliver them to F in Pennsylvania. M shipped the rails
by the defendant railroad which issued to him a negotiable bill
of lading to his own order "notify F," containing the standard
clause that its surrender, properly indorsed, should be required
before delivery. The terminal carrier made delivery to F with-
out securing the bill, which had remained in the possession of
M, who, more than a month after the shipment and before he
had knowledge of the misdelivery, indorsed and delivered the
bill to the plaintiff upon the understanding that the proceeds
of the shipment, when collected by the plaintiff, should be
credited upon the loan of $5,000. Thereafter, the plaintiff
learned of the misdelivery and forwarded the bill with a draft

upon F for the price of the rails, which F refused to honor; whereupon the plaintiff brought this action against the defendant based upon the misdelivery. *Held:*

1. That the plaintiff was a bona fide holder for value of the bill of lading; and that the defendant was liable for the value of the shipment.

2. That there was no merit to the defendant's claim that when the plaintiff took the bill as indorsee, it had become "exhausted" or "spent" through lapse of reasonable time for delivery.

3. That the plaintiff's attempt to secure payment from F did not constitute a ratification of the misdelivery.

Argued January 27th—decided May 12th, 1925.

ACTION to recover damages for the alleged failure of defendant to deliver a carload of rails to plaintiff, brought to the Court of Common Pleas in New Haven County and tried to the court, *Simpson, J.;* judgment rendered for plaintiff for $787, from which defendant appealed. *No error.*

Prior to June 10th, 1920, Mersky purchased of the estate of Beattie a quantity of rails. The plaintiff, in order to assist Mersky in this purchase, gave its note for $5,200, payable one month after date to Mersky, who indorsed and discounted it at the bank, and when the note became due plaintiff was obliged to pay it. Mersky promised to pay plaintiff the $5,200 from the proceeds of the sale of the rails, and did pay, in July and August, 1920, $3,800. Prior to September 11th, 1920, Mersky sold a carload of these rails to Levinson, who ordered them shipped to the Foster Company at Carnegie, Pennsylvania. On September 11th, 1920, Mersky delivered this car of rails to defendant at Leete's Island, and they were shipped under an "order bill of lading," which was assigned to the order of "Mersky, Carnegie, Pennsylvania, notify L. B. Foster at Carnegie, Pennsylvania," and the bill of lading was received by Mersky at this time. Upon the face of the bill was printed: "The surrender of the original order

bill of lading properly endorsed shall be required before the delivery of the property." This car was transported by defendant from Leete's Island to Bay Ridge, New York, and delivered to the Pennsylvania Railroad Company, which transported it to Carnegie, Pennsylvania, and there delivered it to the Foster Company on October 5th, 1920, without the surrender of the original order bill of lading. Foster Company refused to accept the car and notified Levinson that the rails were not of the quality purchased, and thereafter Foster Company, at the direction of Levinson, sold the rails to Copeland for $654.94, the best price obtainable, and forwarded the amount to Levinson. Mersky retained the bill of lading for his own protection, expecting Levinson to pay for the rails as he had agreed and take up the bill of lading. Plaintiff knew of this shipment when made, and from time to time its secretary spoke to Mersky with reference to receiving the proceeds thereof to apply on its note. Three or four weeks after the shipment, that is, about October 11th, 1920, Mersky told plaintiff he could not get hold of Levinson and that he would deliver the bill of lading to it and it could trace the car and find out what had become of it. Plaintiff took the bill of lading and took up with the agent of the defendant the location of the car of rails, and on November 24th, 1920, was informed that the car had been delivered to the Foster Company on October 5th, 1920. Mersky indorsed this bill of lading in blank sometime between October 5th and November 24th, 1920, and turned it over to plaintiff with the understanding that the proceeds of the car of rails were to be applied on his indebtedness on the note.

At the time the bill was indorsed and turned over to plaintiff, neither Mersky nor plaintiff knew that the car had been delivered to the Foster Company and

supposed it would not be delivered until the bill of lading was surrendered. When plaintiff learned from defendant that the car had been delivered to the Foster Company on October 5th, it indorsed the bill of lading and attached a draft thereto drawn on the Foster Company for $1,019.55, the price the rails had been sold to Levinson for, and forwarded the draft and bill of lading through its bank for collection, and the Foster Company refused to honor it. Sometime after plaintiff complained to Mersky that the draft had not been honored, and at Mersky's request plaintiff gave him the bill of lading for the purpose of having him see the Foster Company in New York and collecting its face. Upon the Foster Company refusing to pay the bill, Mersky offered to give it the bill of lading if it would pay him $300. The reasonable value of this car of rails on October 5th, 1920, at Carnegie, was $654.94. Plaintiff did not give Mersky unconditional credit for the sale price of the rails when the bill of lading was indorsed and delivered to it, but it was understood between plaintiff and Mersky that plaintiff was to collect on this bill of lading and credit Mersky with the amount received.

*Harry L. Filer,* for the appellant (defendant).

*Maxwell A. Alderman,* with whom was *Benjamin F. Goldman* and *Isadore Chaplowe,* for the appellee (plaintiff).

WHEELER, C. J. The rights and liabilities of the parties in this shipment are governed by the Federal Bills of Lading Act as interpreted and construed by the Federal tribunals, and by the terms of the bill of lading given to Mersky by defendant as accepted and applied by the Federal tribunals. *Adams Express Co.*

v. *Croninger*, 226 U. S. 491, 499, 33 Sup. Ct. 148; *New England Fruit & Produce Co.* v. *Hines*, 97 Conn. 225, 116 Atl. 243; *Cassone* v. *New York, N. H. & H. R. Co.*, 100 Conn. 262, 123 Atl. 280. Since the shipment was an interstate shipment, the defendant, as the initial carrier, would be liable for the act of the terminal carrier in delivering the car to the Foster Company without requiring a surrender of the bill of lading and without legal excuse for such failure, in violation of the Federal Bills of Lading Act, since the bill of lading required to be issued by defendant under the Federal Act "governs the entire transportation and thus fixes the obligations of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." *Georgia, Fla. & Ala. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 195, 36 Sup. Ct. 541.

While the Federal Bills of Lading Act does not impose in terms the duty upon the carrier to secure the surrender of the bill of lading, it is not obliged under § 8 of the Act to make delivery except upon its production and surrender. If it makes delivery without such production and surrender, it does so at its peril, and if in consequence the shipper suffers a loss, the carrier is bound to indemnify him, and it is held that an action of conversion, not created by the Act but arising out of the obligation of the carrier created by the bill of lading, will lie against the carrier. *Pere Marquette Ry. Co.* v. *French & Co.*, 254 U. S. 538, 41 Sup. Ct. 195. It is difficult to see why, under such circumstances, § 10 of the Act does not give to the shipper an action against the carrier for the delivery of goods to one not lawfully entitled to possession of them, when such delivery is not authorized by that section. The defendant carrier would have been justified, under § 9 of the Act, in delivering to Mersky, to whose order the car of rails was by the bill of lading deliverable, upon his

production of this order bill, or upon the production of the bill by one to whom the order bill had been duly indorsed, or by the production of the order bill indorsed in blank by the consignee, or by the mediate or immediate indorser of the consignee.

The plaintiff was required to prove the delivery of the car of rails by Mersky to defendant and his receipt therefor of the order bill of lading as alleged; the indorsement and transfer of it to the plaintiff for value; the delivery of the car to the Foster Company by defendant without requiring the production and surrender of the bill, and the consequent damage. If the defendant had lawful excuse for such delivery, it was incumbent upon it to allege it and to assume the burden of proving it.

The facts set out in the complaint are not contested except as to the damage caused to plaintiff. The two special defenses are not supported by the finding.

The assignments of error pursued are: (1) The court erred in finding that the plaintiff was a bona fide purchaser of the bill of lading. (2) The court erred in refusing to hold that the bill of lading was spent at the time it was indorsed and turned over to plaintiff. (3) The court erred in refusing to hold that both the plaintiff and Mersky ratified the wrongful delivery to the Foster Company.

The claim that the plaintiff was not a bona fide purchaser, covers both the first and second of these assignments of error, and specifically is, (a) that defendant's delivery to the Foster Company did not cause plaintiff any loss, since it did not cancel Mersky's debt, and, as far as appears, he was able to meet it, and (b) that the goods described in the bill of lading when indorsed to plaintiff had already been delivered to the Foster Company, and the circumstances were such that it must have known that something was

wrong with the shipment. The finding fully answers these claims. The plaintiff gave to Mersky its note, which he discounted, and with the proceeds purchased the rails, of which the car lot in question was a part, and upon plaintiff having to pay the note, promised to pay it from the proceeds of the sale of the rails. From time to time plaintiff spoke to Mersky with reference to receiving the proceeds of the sale of the rails from Levinson, and about October 14th handed it the bill of lading in order to trace the car. Plaintiff endeavored to locate the car through the agent of defendant, and on November 24th was informed it had been delivered to the Foster Company. Prior to this date Mersky indorsed the bill of lading in blank and turned it over to plaintiff, with the understanding that the proceeds of the car of rails were to be applied on his indebtedness to it. The consideration for the transfer cannot be questioned. When it was made neither Mersky nor plaintiff knew that the car had been delivered to the Foster Company If they had known of this, we fail to see what difference it could have made in defendant's obligation arising upon this bill of lading The obligation under it never could become satisfied, nor could the bill become spent, until the obligation had been met. The defendant, by delivering the goods without requiring a surrender of the bill of lading, caused Mersky, the consignee of the goods, to suffer their loss, and the plaintiff, through the indorsement of the bill to it, succeeded to the rights of Mersky. Plaintiff did not cancel any part of Mersky's indebtedness to it, but did agree that the proceeds obtained upon the bill should be applied to this debt, and the refusal of defendant to pay the loss resulting from the delivery of this car lot in violation of its contract obligation to Mersky, is the direct loss to the plaintiff of the value of these goods, in reliance upon which in

good faith it had agreed to dispose of the goods and apply the proceeds in reduction of the debt owed it by Mersky. The court did not err in refusing to find that the bill of lading had been spent at the time it was indorsed to plaintiff. This was not a finding of a fact, but a conclusion to be drawn from the subordinate facts, if these justified it. These facts show that the obligation arising upon this bill of lading had not been met, and hence the bill could not have become exhausted or spent. The plaintiff is a bona fide holder of this order bill of lading, and the defendant carrier having delivered the goods without requiring its production and surrender, is liable to it for their loss. The plaintiff took the bill of lading as security for its advances to the consignor named in this bill. In such a case the court, in *King* v. *Barbarin,* 161 C. C. A. 311, 313, 249 Fed. 303, 305, holds that "a carrier, by delivering goods to the consignee without the production of the bill of lading, is liable to a bona fide holder of the bill for value—whether by way of purchase or as security for advances—before the delivery of the goods at destination." If the plaintiff had suffered no damage, it, as the holder of the bill of lading, could not maintain its action; for example, if Mersky, who retained the bill of lading, had been paid for the goods shipped, the defendant would not be liable to Mersky or his indorsee (the plaintiff) merely because defendant failed to secure the bill before delivery of the goods. *Weinstein* v. *Davis* (Minn.) 196 N. W. 933; *Baughman* v. *Southern Ry. Co.* (S. C.) 121 S. E. 356; *Fourth National Bank* v. *Nashville, C. & St. L. Ry. Co.,* 128 Tenn. 530, 161 S. W. 1144.

The liability of the carrier under the Federal Bills of Lading Act as amended, is not that of an insurer, but that arising for some default in its common-law duty as a carrier, and is limited by the terms of the

Act to " 'any loss, injury or damage caused by it or a succeeding carrier to whom the property may be delivered.' " *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 506, 33 Sup. Ct. 148. "Under § 9 it is physical possession of the bill which is made a justification for delivery of the goods by the carrier. Under that section it is immaterial in what capacity the person holds possession of the bill, and also whether he holds it lawfully or unlawfully, so long as the carrier has no notice of any infirmity of title." *Pere Marquette Ry. Co.* v. *French & Co.,* 254 U. S. 538, 544, 41 Sup Ct. 195. There can be no exoneration of the carrier "where loss to shipper or subsequent purchaser of the bill results" from the failure of the carrier to take up the bill. This case also holds: "But where the loss suffered is not the result of the failure to take up the bill, mere failure to take it up does not defeat the exoneration." P. 545. The cases of *City National Bank* v. *El Paso & N. E. R. Co.,* 262 U. S. 695, 43 Sup. Ct. 640; *Saugerties Bank* v. *Delaware & Hudson Co.,* 204 N. Y. App. Div. 211, 198 N. Y. Supp. 722; *Kemper Mill Elevator Co.* v. *Hines,* 293 Mo. 88, 239 S. W. 803; *Swift* v. *Davis, Director General,* 118 Misc. 205, 193 N. Y. Supp. 848; and *Banik* v. *Chicago, M. & St. P. Ry. Co.,* 147 Minn. 175, 179 N. W. 899, are examples where the failure to take up the bill did not defeat the exoneration of the carrier. *Pere Marquette Ry. Co.* v. *French & Co.,* 254 U. S. 538, 41 Sup. Ct. 195, at pages 546, 547, also holds: "But where delivery is made to a person who has the bill or who has authority from the holder of it, and the cause of the shipper's loss is not the failure to require surrender of the bill but the improper acquisition of it by the deliveree or his improper subsequent conduct, the mere technical failure to require presentation and surrender of the bill will not make the delivery a conversion."

So the consignor or the holder may by his own negligent course deprive himself of the right to invoke the carrier's negligence in delivering the shipment without requiring the surrender of the bill of lading, the carrier's negligence in these circumstances not being the proximate cause of the loss of the shipment. *Fourth National Bank* v. *Nashville, C. & St. L. Ry. Co.,* 128 Tenn. 530, 161 S. W. 1144. The facts present in this case do not fall within any of the exceptions to which we have referred, and the circumstances afford no ground for claiming that plaintiff is estopped from pursuing its action, since they fairly disclose it to be a bona fide purchaser of this bill and that it lost its goods through the failure of the defendant carrier to require the presentation and surrender of the bill of lading, and its failure, coupled with the loss of the goods thereby, constituted a conversion of the goods.

The final claim of the carrier is that plaintiff and Mersky ratified the wrongful delivery to the Foster Company by the attempt of plaintiff to secure payment for the goods by drawing on the Foster Company by draft and later by offering to transfer to it the bill of lading. Defendant's liability had already arisen for its wrongful delivery, and plaintiff was entitled to secure payment from the Foster Company for the shipment or to dispose of the bill of lading to it. In neither act was there basis for a claim that thereby the wrongful delivery was ratified. Plaintiff's course was an attempt to secure payment for the shipment from the person to whom the goods were wrongfully delivered; had it succeeded in its attempt defendant would have been relieved of its obligation to plaintiff. The defendant should not be permitted to complain of plaintiff's attempt.

There is no error.

In this opinion the other judges concurred.