# Louisville & Nashville Railroad Company v. Mengel Company.

(Decided April 22, 1927.)

(Rehearing Denied, with Modification, June 21, 1927.)

## Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Carriers.—Where seller of locomotive crane consigned it to buyer or its order, and signed bill of lading with buyer's name, and where carrier after delay in shipment and return of bill of lading to seller with draft attached unpaid delivered shipment on order of consignee buyer without surrender of bill of lading, held railroad was liable for value of shipment to seller holding bill of lading, in view of U. S. Comp. Stats, section 8604b, defining order bill of lading.

2. Pleading.—Where there is any defect, imperfection, or omission in any pleading, whether in substance or form, which would be fatal on demurrer, yet issue joined be such as necessarily requires proof of facts so defectively stated or omitted, such defect, imperfection, or omission is cured by verdict.

3. Carriers.—Stamped indorsement on orders bill of lading, not signed by shipper or any one in its behalf, held ineffective to change order bill into straight bill.

SQUIRE R. OGDEN, GORDON & LAURENT and J. J. DANHOF, JR., for appellant.

A. J. CARROLL and H. E. McELWAIN, Jr., for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The Louisville & Nashville Railroad Company seeks by this appeal to reverse a judgment for $4,500.00 with interest, etc., recovered against it by the Mengel Company. In October, 1922, the Mengel Company was the owner of a locomotive crane, which it had agreed to sell to the Midwestern Company, of Chicago, for $5,000.00, of which sum $500,00 was paid in cash. The Midwestern Company, in turn, immediately contracted to sell the crane to the Michigan Portland Cement Company, of Chelsea, Mich., for $6,000.00, and notified the Mengel Company to ship this crane from the Midwestern Company, Louisville, Ky., to the order of the Midwestern Company, Chelsea, Mich., notify Michigan Portland Cement Company, which was done, and the shipment was so

shipped and routed over Louisville & Nashville, Big Four and Michigan Central Railroads. This crane, which was shipped in the name of the Midwestern Company to the order of the Midwestern Company, was loaded and prepared for shipment on the private tracks of the Mengel Company. The Mengel Company made out the bill of lading in the name of the Midwestern Company, and consigned the shipment to the order of the Midwestern Company, attaching to the bill of lading a notice telling the Louisville & Nashville Railroad Company that the bill of lading covered property which belonged to the Mengel Company, loaded at its siding, to be pulled from its siding, and that the signed bill of lading was to be returned to the Mengel Company, and all of this was done without objection on the part of the railroad company. This was an order bill of lading and contained this provision:

"The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property."

After making out this bill, the Mengel Company had one of its employees sign the name of the Midwestern Company to it, and it was then, with the notice that the crane belonged to the Mengel Company, mentioned above, sent to the Louisville & Nashville Railroad Company. The agent of the Louisville & Nashville Railroad Company signed it, put on it a stamp referred to later, returned the bill thus stamped to the Mengel Company, took charge of the shipment, and started it on its way. To this bill of lading the Mengel Company attached a draft for $4,500 drawn on the Midwestern Company, Chicago, Ill. This bill of lading with draft attached was sent by the Mengel Company to the Corn Exchange National Bank of Chicago. The draft was never paid, the bill of lading was never surrendered, and later both were returned to the Mengel Company. When this crane got to Toledo, or some point near there, and while it was in the hands of the Michigan Central, a connecting carrier of the Louisville & Nashville Railroad, it was wrecked, so that it became necessary for the crane to be repaired before it would be of any use to any one, and accordingly the Michigan Central took what was left of the crane after the wreck to the Industrial Iron Works at Bay City, Mich., by which concern the crane was repaired, and after the repair was made the crane was then, upon order of the Midwestern Company delivered to the Mich-

igan Portland Cement Company at Chelsea, Mich., without requiring the surrender of the bill of lading, which had been delivered to and was then held by the Mengel Company.

The Mengel Company began this suit, alleging in its petition the facts relative to its ownership of and the shipment of this crane, and its delivery without surrender of the bill of lading, to the Michigan Portland Cement Company, and asking judgment against the Louisville & Nashville Railroad Company for $4,500. The defendant's demurrer to the ptition was overruled. This would have been a better petition if it had charged specifically that the Louisville & Nashville Railroad Company had notice of the ownership interest of the Mengel Company in this crane, but it is not necessary for us now to pass on the sufficiency of the petition.

"The rule is: 'Where there is any defect, imperfection, or omission in any pleading, whether in substance or form, which would have been fatal on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively stated or omitted, and without which it is not to be presumed that either the judge could direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict.' " Bickel Asphalt Paving Co. v. Yeager, 176 Ky. 712, 197 S. W. 417. That such a notice was given and received by the Louisville & Nashville Railroad Company is established by the evidence without dispute. There is but one question in the record, and that is: Has this crane been carried and delivered as contracted?

The contention of the railroad company is that this was a straight bill of lading, and that contention is bottomed on this, which was stamped on this bill by the Louisville & Nashville Railroad Company after it was signed by the Mengel Company:

"This shipment is tendered and received subject to the terms and conditions of the company's uniform bill of lading, effective March 15, 1922. This receipt is not negotiable, and, if the shipment is consigned 'to order,' must be exchanged for the company's uniform order bill.

"H. C. Dempf (Agent's Signature) Agent.
"————. (Shipper's Signature.)"

It is not necessary for us to decide whether this stamped indorsement would be sufficient to change this order bill into a straight bill, if it had been signed by both parties, for it was never signed by any one on behalf of the shipper, and under such circumstances it cannot affect or abridge the Mengel Company's rights. If the Louisville & Nashville did not approve the bill as prepared, signed, and tendered by the Mengel Company, it should have itself made out such bill as it desired, and tendered it to the Mengel Company; and should not have moved this crane until it and the Mengel Company had agreed on the bill. This stamp thereafter placed by the Louisville & Nashville Railroad Company on this bill left still in force the agreement not to make delivery without surrender of the bill, the violation of which agreement makes it liable to the Mengel Company. The Louisville & Nashville Railroad Company is contending that this bill of lading was a shipment from the Midwestern Company of Louisville, to the order of the Midwestern Company at Chelsea, Mich., and that the Mengel Company was a stranger to the bill, and had no interest in this property at all, but a case that is exactly parallel to this is the case of Babbit et al. v. Grand Trunk Western R. Co., 285 Ill. 267, 120 N. E. 803. In that case, Babbit et al. had sold a carload of beans to A. J. Thompson Company, of Kansas City, Mo., for $1,683.15, and at the direction of Thompson Company this car was shipped to the order of A. J. Thompson Company, Evansville, Ind., notify Ragon Bros. The bill of lading, just as in this case, was attached to a sight draft, and sent to Kansas City, and presented to A. J. Thompson Company for collection. The draft was not honored, and was returned to Babbit et al. When the beans arrived at Evansville, they were by the Chicago & Eastern Illinois Railroad Company, upon the written order of A. J. Thompson Company, delivered to Ragon Bros., without the surrender of the bill of lading, and Ragon Bros. paid the Thompson Company for the beans. That seems to be exactly this case, for here the Midwestern Company, after this crane was repaired, directed it to be delivered to the Michigan Portland Cement Company, and the Michigan Portland Cement Company has paid the Midwestern Company almost, if not entirely, all that was to be paid for this crane. In the Babbit case the court found for Babbit, and its finding was affirmed. There are other parallel cases.

Thompson bought some more beans from T. J. Winget & Son, of Linden, Mich., and these beans were shipped in the name of A. J. Thompson Company from Linden, Mich., consigned to the order of A. J. Thompson Company, of Des Moines, Iowa, notify Hewitt & Son. In this case a draft for $1,890.62 was attached to the bill of lading and sent to Kansas City for collection. Upon direction from A. J. Thompson Company, the railroad company at Desmoines, Iowa, delivered to Hewitt & Son these beans, without the surrender of the original bill of lading, and in the case of Winget v. Grand Trunk Western R. Co., 210 Mich. 100, 177 N. W. 273, the court held the railroad company responsible. Certiorari was denied by United States Supreme Court. See 254 U. S. 630, 41 S. Ct. 6, 65 L. Ed. 447.

In the case of King v. Barbarin (C. C. A.) 249 F. 303, Barbarin & Beach had shipped a carload of beans from Freeland, Mich., in the name of Botsford & Barrett as shippers to the order of Botsford & Barrett, consignees, at Pittsburgh, Pa., notify Arbuckle & Co. Barbarin & Beach took this bill of lading, attached to it a draft, and sent it for collection, but it was returned unpaid. In the meantime, without demanding surrender of the bill, the railroad company had delivered to Arbuckle & Co. these beans, and in that case Barbarin & Beach were allowed to recover for their beans. See further discussion, infra.

In the case of Canandaigua National Bank v. C. C. & St. L. R. Co., 155 App. Div. 53, 139 N. Y. S. 561, the Manchester Produce Company had sold some apples to Neumann & Co., and these apples were shipped in the name of Neumann & Co. from Farmington, N. Y., consigned to the order of Neumann & Co., Terre Haute, Ind., notify Dan Case. The Manchester Produce Company attached this bill to a draft upon the Neumann Company for the cost of the apples, and then sold the draft and bill to the plaintiff bank. When the car got to Terre Haute, Neumann & Co. gave an order on the railroad company to deliver the apples to Dan Case, and, without requiring the bill of lading to be surrendered, the railroad company did so, and again the railroad company had to pay for the property. The appellant argues now that Babbit, Winget, Barbarin & Beach, and Canadaigua Nat. Bank cases were decided before the enactment of the Bills of Lading Act, and hence are not now authority,

but we are unable to see in what particular that
act changes the situation. Straight and order bills
and bills with restricted negotiability were in use for
years before the passage of the act. It created nothing
new, and was passed merely for the purpose of securing
uniformity in rules governing bills of lading.

In all these cases the carriers were making the same
defense that the Louisville & Nashville is making here.
It is contending that because this was shipped in the
name of Midwestern Company, to the order of the Mid-
western Company, therefore the Louisville & Nashville
can deal with the Midwestern Company and can deliver
this crane on the order of the Midwestern Company,
without requiring the surrender of this bill, but, as we
have stated above, the evidence shows that the Louis-
ville & Nashville was notified that this was the property
of the Mengel Company and it seems to us that their
argument is answered fully by this, which is taken from
King v. Barbarin (C. C. A.) 249 F. 303:

"Were petitioners, as between themselves and
the carrier, the lawful holders of the bill of lading,
entitling them to be recognized as such? It is beyond
question that, had petitioners been named in the bill
as shippers, a delivery to the consignees without the
production and surrender of the bill of lading would
have rendered the carrier liable. The carrier con-
tends, however, that the delivery of the shipment to
it upon a bill of lading, in which Botsford & Barrett
were named both as shippers and consignees, peti-
tioners became strangers to the transaction, and re-
linquished thenceforth all right of control over the
beans; that the carrier had neither notice nor knowl-
edge that petitioners intended to retain any control
over or ownership in the shipment, and were there-
fore entitled conclusively to treat Botsford & Bar-
rett as the owners and to deliver the shipment to
their order, without requiring the surrender of the
bill of lading. This proposition presents the pivotal
question in the case.

"In our opinion this contention fails to give due
weight to the considerations that by the bill of lading
the carrier acknowledged receipt of the shipment,
not from the 'consignors' in terms, but from the
'owners'; that the consignees were only prima facie
the owners of the beans, notwithstanding the ship-

ment had been consigned to their order (Turnbull v. Mich. Central R. Co., 183 Mich. 213, 219, 150 N. W. 132); that 'the presumption as to ownership arising from the bill may be explained or rebutted by other evidence showing where the real ownership lies' (The Carlos F. Roses, 177 U. S. 655, 665, 20 S. Ct. 803, 807, 44 L. Ed. 929); and that the actual owner of the goods was entitled to the benefit of the express provision of the contract that the shipment should not be delivered without the surrender of the bill of lading.

"Petitioners were in fact owners of the beans at the time of their delivery to the carrier. The latter delivered to them a bill of lading which was the symbol of the property named therein. Its transfer to them by the consignors, without indorsement and with intent to pass the title, would have deprived the latter of control of the goods and have constructively delivered them to the former. Merchants' Bank v. Union R. & Transp. Co., 69 N. Y. 373, 379; Bank v. Railroad, 58 N. H. 203, 204. Under such delivery with the intent stated, it would not be necessary to the protection of petitioners' rights that they give notice thereof to the carrier who held the property. Forbes v. Boston & Lowell R. Co., 133 Mass. 154, 156; Union Pacific R. Co. v. Johnson, 45 Neb. 57, 63 N. W. 144, 50 Am. St. Rep. 540. By the transaction in question, Botsford & Barrett presumably acquiesced, to say the least, in petitioner's retention of the bill. The fact of such retention, under the circumstances shown, was, in our opinion, evidence of an intent on the part of petitioners to hold the title until the beans were paid for, so far as necessary to secure such payment, and of the consent of Botsford & Barrett thereto. Merchants' Bank v. Union R. & Transp. Co., supra, at page 380. Under these circumstances, and in view of the practice of grain dealers to ship goods and collect therefor on draft accompanied by bill of lading, we think the carrier was not entitled, from the mere fact that Botsford & Barrett were named as shippers, conclusively to presume that petitioners had received payment for the beans, but was fairly charged with notice, not only that petitioners might at least not have received their pay, but of whatever claim they might

turn out to have, so far as evidenced by their posses-
sion of the bill of lading.''

All we would have to do would be just change the
names and the commodity and that fits this case exactly.
It frequently happens that goods are shipped in the name
of some one other than the real owner. Thus, A. may
own a large quantity of some commodity, which he de-
sires to sell. C. is in the market for such a commodity
and desires to buy. B. is a middleman, who learns of C.'s
desire to purchase and A.'s desire to sell. It frequently
happens that such a middleman has no stock in trade
other than his knowledge of who has a given commodity
and desired to sell it, and who wants that commodity and
desires to buy it. It is important to B. to keep from C. all
knowledge of the source from which he obtains this com-
modity, and, accordingly, he arranges to buy the com-
modity from A., then arranges to sell the commodity to
C., and has the commodity shipped in the name of B. as
shipper, to the order of B. as consignee, with directions
to notify C. of the arrival of the goods. A. ships the
goods as directed, takes the bill of lading from the carrier
and attaches to it a draft on B. B. is now prima facie
the owner of the goods. The carrier knows that A. has
some rights in the goods, because when the goods are
shipped A. demands of the carrier that the bill of lading
be delivered to him. When that is done, the carrier can-
not, without a surrender of the bill, deliver these goods
upon the order of B., except at its peril. The bill of lad-
ing represents the goods. In this case the Mengel Com-
pany demanded and received from the Louisville & Nash-
ville the bill of lading for this crane. In this bill of lading
the Louisville & Nashville undertook in writing, not to
deliver this property without requiring surrender of
the original bill of lading, and yet, in spite of its under-
taking, the connecting carrier representing the Louis-
ville & Nashville has made delivery.

When we study the facts in this case in the light of
these authorities, our conclusion is that the peremptory
instruction to find for the Mengel Company was prop-
erly given.

The judgment is affirmed.